# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANGELA RENEAU, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FAMILY DOLLAR STORES, INC.,<br><br>Defendant. | Case No. 1:20-cv-938 |

## CLASS ACTION COMPLAINT

Plaintiff Angela Reneau ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Family Dollar Stores, Inc., ("Defendant" or "Family Dollar"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and its implementing regulations (the "ADA"), for declaratory and injunctive relief, attorneys' fees, and expenses.

## INTRODUCTION

1.      This is a case about putting profits ahead of the rights of people with disabilities.

2.      Family Dollar stores are ubiquitous in the United States. With over 8,000 locations across the country, the stores have integrated themselves into many communities, becoming important outlets for everyday goods.

3.      But over the years, as Family Dollar stores have spread, they have become notorious for routinely messy and cumbersome conditions – specifically, cluttered aisles that are difficult to navigate. *See, e.g., Family Dollar's Biggest Problem in 3 Photos and a Vine*, HuffPost, (June 11, 2014) ("Family Dollar stores have *way* too much merchandise on the floor. So much, in

fact, that you can't even comfortably walk down some aisles.") (emphasis in original);[1] *A Nasty Look Filth, Clutter Define Local Family Dollar Store*, The Spirit, (Feb. 20 2019) ("[A]isles are blocked by items and trash that make it impossible to navigate");[2] *Local Family Dollar Closes Over What Some Say Are "Deplorable" Conditions*, Local Memphis (Nov. 7 2019);[3] *We Visited Dollar Tree, Dollar General, and Family Dollar to Compare, and Only One Wasn't a Messy Disaster Inside*, Business Insider (Dec. 22, 2019) ("[T]he [Family Dollar] store had a lot of distracting clutter in the aisles… It seemed as if a lot of items were waiting to be unloaded onto the shelves, which made the appearance of the store rather unsettling.").[4]

4.     Upon information and belief, Family Dollar actively facilitates the messy conditions within its stores based on a calculated judgment that doing so will increase sales, revenues, and profits. This occurs in two ways.

5.     First, Family Dollar positions a host of obstructions, including but not limited to, merchandise, merchandise displays, boxes, stocking carts and/or other items so that they block or narrow the aisle pathways of its stores.

6.     This practice is intentional, and driven by a calculated judgment that impeding interior paths of travel increases sales revenue and profits. *See, e.g.*, *Stuff Piled in the Aisle? It's*

---

[1] Available at https://www.huffpost.com/entry/family-dollars-biggest-problem-photos_n_5479837 as of February 10, 2020.

[2] Available at http://chesterspirit.com/2019/02/a-nasty-look-filth-clutter-define-local-family-dollar-store/ as of February 10, 2020.

[3] Available at https://www.localmemphis.com/news/local-biz/local-family-dollar-store-close-over-what-some-say-are-deplorable-conditions/ as of February 10, 2020.

[4] Available at https://www.businessinsider.com/dollar-general-dollar-tree-family-dollar-stores-compared-messy-2019-12 as of February 10, 2020.

*There to Get You to Spend More*, The New York Times, (April 7, 2011);[5] *see also, Why a Messy, Cluttered Store is Good for Business*, Time Magazine, (April 8, 2011).[6]

      7.      Second, Family Dollar relies on flawed operational and management policies and practices for stocking, staffing, and shipments that ensure its stores will routinely and systematically become inaccessible because of excess merchandise and merchandise-related equipment that cannot be adequately stored or stocked, resulting in cluttered and messy stores.

      8.      In effect, Family Dollar understaffs its stores and fails to ensure that there is an adequate amount of trained staff available and capable of handling the amount of merchandise regularly delivered to Family Dollar stores that is required to be stocked in a manner that does not create persistent inaccessible conditions, such as impeded interior paths of travel.

      9.      Understaffing and overworking at Family Dollar stores is nothing new. For example, in 2014 the Court of Appeals for the Eleventh Circuit affirmed a jury's finding that store "managers" at Family Dollar were being overworked and denied overtime pay by Family Dollar for their routinely 60 to 70 hour work weeks. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1239 (11th Cir. 2008).

      10.     More recently, Family Dollar was in the news when a viral story broke about a working mother who couldn't pump breastmilk because she was the only assigned employee for the store. After reaching out to human resources and being told to "run back and forth every couple of minutes to pump in between customers", she decided to briefly close the store. As one observer

---

[5] Available at https://www.nytimes.com/2011/04/08/business/08clutter.html as of February 10, 2020.

[6] Available at http://business.time.com/2011/04/08/why-a-messy-cluttered-store-is-good-for-business/ as of February 10, 2020.

noted: "Even understaffed, moms gotta do what they gotta do." *Viral Photo Shows Woman Closed Family Dollar Store to Pump Breast Milk*, Today (Feb. 22, 2019).[7]

11.    In addition to understaffing, Family Dollar fails to ensure that there is adequate floor space, both retail and backroom, within its stores to accommodate the amount of merchandise that Family Dollar ships to and requires its stores to have on hand.

12.    And finally, Family Dollar fails to ensure that its staff are adequately trained to ensure that its stores are readily accessible to individuals with mobility disabilities.

13.    The combined effect of these shortcomings is that when Family Dollar delivers new shipments of merchandise to its stores, there is routinely insufficient staff to unload the merchandise and insufficient space to store the merchandise. And the staff who are available to unload the merchandise are overworked and insufficiently trained to ensure the merchandise isn't stored in a manner that creates impermissible access barriers. The consequences are routinely and persistently inaccessible stores, cluttered with merchandise and equipment that blocks interior paths of travel.

14.    The impact on a community can be significant. For example, one community in Tonopah, Nevada launched a change.org petition to lobby Family Dollar's corporate offices to help their understaffed local Family Dollar store. Over 400 people have signed the petition, with many commenting on how the store's persistent inaccessibility impacts them and their community:

- "Our store is always behind unloading and the floor is constantly full of boxes and its difficult to maneuver around…. it's really hard to get around the store when you have to turn around out of every aisle or leave the cart because it can't make it. We really need help".

- "It's so sad because being such a rural community with so many elderly people.… it's scary to even think that our elders are going into this store."

---

[7]  Available at  https://www.today.com/parents/viral-photo-shows-woman-closed-family-dollar-store-pump-breast-t149251 as of February 10, 2020.

- "Being Tonopah's only real option for reasonably priced shopping, they have gotten away with this as there really isn't much choice for patrons to take their business elsewhere.... It just goes to show that they're a corporation that is all about their bottom line and not about their employees or customers."



Figure 1 – Change.org - Tonopah, NV residents petitioning Family Dollar to clean-up store.[8]

15.     The cluttering problems within Family Dollar stores have not gone unnoticed by authorities, however.

---

[8] Available at https://www.change.org/p/family-dollar-corporate-headquarters-tonopah-nv-family-dollar-needs-corporates-assistance as of February 10, 2020.

5

16. In 2019, Family Dollar was investigated by the U.S. Department of Justice in Rhode Island for failing to ensure that its stores' interior paths of access are unimpeded. The investigation concluded with a settlement agreement, including a civil penalty and an agreement that Family Dollar will ensure all of its Rhode Island stores remain fully accessible to people with disabilities by ensuring that its employees will not place merchandise, shopping carts, boxes or other items in a way that reduces or eliminates accessibility. *See RI Family Dollar Stores to Pay $7,500, Address ADA Compliance Issues Following Settlement with U.S.*, GoLocalProv (Sept. 25, 2019).[9]

17. Family Dollar is also facing active litigation in the Western District of Pennsylvania, the District of Colorado, the Southern District of Florida, and California state court, in civil enforcement actions seeking to address Defendant's inaccessible stores. *See Lewandowski v. Family Dollar Stores Inc.*, No. 2:19-cv-0085 (W.D. Pa.); *Agardy v. Family Dollar Stores, Inc.*, No. 1:19-cv-03381 (D. Co.); *Disability Advocates and Counseling Group, Inc. v. Dollar Tree, Inc. d/b/a Family Dollar Stores*, No. 1:19-cv-20478 (S.D. Fl.); *Martinez v. Family Dollar Stores, Inc.*, No. 20-STCV-03676 (Cal. Super. Ct.).

18. As reflected by these enforcement actions, although Family Dollar's policies and practices may increase profits for Family Dollar, it comes at the expense of basic civil rights guaranteed to people with disabilities by the ADA.

19. Plaintiff has regularly visited Defendant's Family Dollar stores and been repeatedly denied full and equal access to the stores as a result of accessibility barriers existing in interior paths of travel. These access barriers include but are not limited to: merchandise, merchandise displays, stocking carts, boxes, and/or other items that impermissibly block or narrow the aisle

---

[9] Available at https://www.golocalprov.com/news/ri-family-dollar-stores-to-pay-7500-address-ada-compliance-issues-following as of February 10, 2020.

pathways. For Plaintiff, as an individual with a legal mobility disability as defined by the ADA, these conditions violate the ADA and deny Plaintiff's equal access to the goods and services offered at Defendant's stores.

20.     The access barriers described herein are not temporary and isolated. They are systemic, recurring, and reflective of Defendant's policies and practices.  Plaintiff has encountered the same types of barriers on multiple occasions and has been repeatedly deterred from accessing Defendant's goods and services as a result.

21.     Moreover, this action is not about a single specific barrier that Plaintiff has encountered – rather, this action seeks to address the persistently inaccessible conditions of Defendant's stores that are occurring because of Defendant's practices and policies of understaffing and overloading its stores, as well as intentionally cluttering its stores with merchandise and other items within interior paths of travel. Plaintiff is putting Defendant on notice that its stores' conditions are inaccessible because of the many types of access barriers that are present, persisting, and reoccurring within its stores.

22.     Counsel for Plaintiff has overseen a sampling investigation of Defendant's Illinois stores which has confirmed the widespread existence of interior access barriers that are the same as, or similar to, the barriers directly experienced by Plaintiff.

23.     In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

a)  Defendant remediate all interior path of travel access barriers at Defendant's
    Illinois stores, consistent with the ADA;

b) Defendant change its policies and practices to ensure its Illinois stores are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters; and

c) Plaintiff's representatives shall monitor Defendant's Illinois stores to ensure that the injunctive relief ordered pursuant to this Complaint has been implemented and will remain in place.

24.     Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate…. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA'S CLEAR AND COMPREHENSIVE MANDATE

25.     The ADA was enacted over a quarter century ago and was intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

26.     The ADA is the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. Like other civil rights laws, the purpose of the ADA is clear: the eradication of discrimination. As one legal scholar explained: "A single step in front of a store may not immediately call to mind images of Lester Maddox standing

in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people." Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

27.     The Supplementary Information to 28 C.F.R. § 36 explains, among other things: "Some of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities."

28.     Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). It prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in the goods or services offered by a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii). The ADA further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

9

29.     Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); or from affording goods, services, facilities, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); or from providing goods, services, facilities, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)).

## THE ADA AND THE RIGHT OF NON-DISCRIMINATORY ACCESS TO GOODS

30.     The ADA requires Defendant to provide individuals who use wheelchairs or scooters full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages, and accommodations, and further requires that all of Defendant's facilities that are open to the public must be "readily accessible". 42 U.S.C. §§ 12182(a) and 12183.

31.     The ADA specifically prioritizes "measures to provide access to those areas where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks, rearranging tables …" 28 C.F.R. § 36.304

32.     The Department of Justice, pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical structural requirements that a public accommodation must meet in order to be "readily accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

33.     In order for Defendant's facilities to be "readily accessible" under Title III of the ADA, merchandise on fixed aisle shelving in a retail store must be located on an accessible route. The applicable "accessible route" standards are set forth in the 2010 Standards at Section 403.5.1.

*See also* ADA Guide for Small Businesses, June 1999, *available at* https://www.ada.gov/smbustxt.htm (noting that "when sales items are displayed or stored on shelves for selection by customers, the store must provide an accessible route to fixed shelves and displays...").

34. ADA Figure 403.5.1 explains that an accessible route must be a minimum of 36 inches, but can be reduced to 32 inches for a length of no more than 24 inches, such as at doors, so long as the 32 inch segments are at least 48 inches apart. *See* ADA Figure 403.5.1 *available at* https://www.access-board.gov/guidelines-and-standards/buildings-andsites/about-the-ada-standards/ada-standards/chapter-4-accessible-routes

35. The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

36. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

## JURISDICTION AND VENUE

37. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

38. Plaintiff's claims asserted herein arose in this judicial district, and Defendant does substantial business in this judicial district.

39.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

40.     Plaintiff Angela Reneau is, and at all times relevant hereto was, a resident of Chicago, Illinois.

41.     Plaintiff Reneau is a person with a double leg amputation who uses a wheelchair for mobility. She is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

42.     Plaintiff is a tester in this litigation and a regular customer of Defendant's stores who desires equal access to Defendant's goods and services. *See, e.g., Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093, 1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982).

43.     Defendant Family Dollar Stores, Inc. is a Delaware corporation, and is headquartered at 10401 Monroe Road, Matthews, North Carolina 28105-5349.

44.     Defendant's stores are places of public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS

**I.     Plaintiff Has Been Denied Full and Equal Access to Defendant's Stores.**

45.     Plaintiff often shops at Defendant's Family Dollar stores located at 3239 W Lawrence Ave, Chicago, IL 60625 (the "Lawrence Store") and 4728 N Pulaski Road, Chicago, IL 60630 (the "Pulaski Store") for goods and services, including most recently in October 2019.

46.     Plaintiff resides approximately 1.6 miles from the Lawrence Store and 0.7 miles from the Pulaski Store.

47.     Plaintiff regularly frequents Defendant's stores for goods and services, and her ability to independently patronize businesses like Family Dollar is important to Plaintiff and her quality of life; it enables her to obtain necessary goods and services and allows her to interact with the community, which is a critical social outlet for her.

48.     During Plaintiff's visits to Defendant's Lawrence Store and Pulaski Store, she has repeatedly encountered interior access barriers within the stores, including but not limited to merchandise, merchandise displays, boxes, and stocking carts, which narrowed interior paths of access to less than thirty-two inches in width. These barriers precluded Plaintiff's equal access to Defendant's goods and services in violation of the ADA's equal access mandate, generally, and the requirements of the 2010 Standards Section 403.5.1. Plaintiff would shop at Defendant's stores more often, and with less difficulty, if Defendant's stores were readily accessible.

49.     Plaintiff regularly encounters what she refers to as "junk" throughout the aisles of Defendant's stores that makes it difficult or impossible for her to navigate aisles. In some instances, she recalls merchandise such as purses or clothing becoming affixed or attached to her wheelchair. As she tried to pass through narrow aisles cluttered with such merchandise, she either had to physically move out of the way or she had to turn her wheelchair around to find an alternate route.

50.     Plaintiff has often observed that the Lawrence Store and Pulaski Store appear to be understaffed, as she has regularly encountered barriers such as merchandise that appeared waiting to be stocked or stocking equipment that had no employee present or nearby. Nor has Plaintiff been able to find assistance when she has encountered barriers. Instead, Plaintiff has typically been forced to turn around and find an alternate route to navigate the store.

51.     A separate investigation of the Lawrence Store and the Pulaski Store, conducted on behalf of Plaintiff, revealed the same types of access barriers that Plaintiff has repeatedly encountered that narrow the pathway to less than thirty-two inches in width.

52.     In addition, a sampling investigation of Defendant's Illinois Family Dollar locations was conducted, which also revealed the same problems that were present in the locations visited by Plaintiff were also present in the following stores:

    a)  100 S Laramie Ave, Chicago, IL 60644;

    b)  413 S Kedzie Ave, Chicago, IL 60612;

    c)  4748 W Fullerton Ave, Chicago, IL 60639;

    d)  5525 W Division St, Chicago, IL 60651;

    e)  560 Manheim Road, Hillside, IL 60162;

    f)  905 N 25th Ave, Melrose, IL 60160; and,

    g)  1019 Madison St, Maywood, IL 60153.

53.     The barriers usually take the form of merchandise or merchandise-related equipment and materials.  Below are typical examples of the types of barriers that are routinely and persistently occurring at Family Dollar's Illinois stores, which narrow paths to less than thirty-two inches in width:



*Figure 2 – Family Dollar – Boxes cluttering and narrowing aisle.*



*Figure 3 – Family Dollar – Merchandise and displays narrowing aisle.*



*Figure 4 – Family Dollar – Merchandise displays narrowing aisle.*



*Figure 5 – Family Dollar – Stocking equipment blocking aisle.*

54.     The barriers depicted above illustrate some, but not all, of the types of interior access barriers at Defendant's stores. Collectively, these barriers impeded Plaintiff's access to goods and services at Defendant's stores.

55.     As a result of Defendant's non-compliance with the ADA, Plaintiff's rights to full and equal, non-discriminatory, and safe access to Defendant's goods and facilities has been denied.

56.     Plaintiff will be deterred from returning to and fully and safely accessing Defendant's facilities so long as Defendant's facilities remain non-compliant, and so long as

18

Defendant continues to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendant's facilities.

57.     Nonetheless, Plaintiff would like to continue to visit Defendant's stores that are close to her home, both to attempt to access goods and services in those stores and to survey the stores for compliance with the ADA.

58.     Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendant's facilities in violation of her rights under the ADA.

59.     As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendant's facilities, have access barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

## II.     Defendant Denies Individuals With Disabilities Full and Equal Access to its Stores.

60.     Defendant is engaged in the ownership, management, operation, and development of retail stores throughout the United States, including, upon information and belief, approximately 8,236 stores across the United States and 225 stores across Illinois.

61.     As the owner, operator, and/or manager of its properties, Defendant employs policies, practices, and procedures with regard to the operation and management of its facilities.

62.     However, as set forth herein, these policies, practices, and procedures are inadequate in that Defendant's facilities are operated in violation of the accessibility requirements of Title III of the ADA.

63.     On information and belief, Defendant relies on regional and/or divisional geographic operational and management policies and practices, rather than a singular centralized national policy and practice.

64.     As evidenced by the widespread inaccessibility of Defendant's Illinois stores visited by Plaintiff and revealed by the sampling investigation, absent a change in Defendant's regional policies and practices, access barriers are likely to reoccur in Defendant's Illinois stores even after they have been remediated in the first instance.

65.     Accordingly, Plaintiff seeks an injunction to compel Family Dollar to remove the barriers currently present at its Illinois stores and to modify its policies and practices that have created or allowed, and will create or allow, access barriers in its Illinois stores.

## CLASS ALLEGATIONS

66.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(2), individually and on behalf of the following classes:

> All persons with qualified mobility disabilities who have attempted, or will attempt, to access the interior of any store owned or operated by Defendant within the operational region encompassing Defendant's Illinois stores and have, or will have, experienced access barriers in interior paths of travel.

67.     Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

68.     Typicality: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

69.     Common Questions of Fact and Law: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of,

Defendant's facilities and/or services due to Defendant's failure to make its facilities fully accessible and independently usable as above described. The questions of law and fact that are common to the class include:

a. Whether Defendant operates places of public accommodation and are subject to Title III of the ADA and its implementing regulations;

b. Whether storing merchandise or other items in interior aisles of the stores makes the stores inaccessible to Plaintiff and putative class members; and,

c. Whether Defendant's shipping, storage, and stocking policies and practices discriminate against Plaintiff and putative class members in violation of Title III of the ADA and its implementing regulations.

70.     <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

71.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## **CAUSE OF ACTION: VIOLATION OF THE ADA**

72.     Family Dollar has failed, and continues to fail, to provide individuals who use wheelchairs or scooters with full and equal enjoyment of its facilities.

73.     Family Dollar has discriminated against Plaintiff and the class in that Family Dollar has failed to make its stores fully accessible to, and independently usable by, individuals who use wheelchairs or scooters in violation of 42 U.S.C. § 12182(a) as described above, and for violations of Section 403.5.1 of the 2010 Standards.

74.     Family Dollar has also failed to modify its policies, practices, or procedures when necessary to afford its goods, services, facilities, and/or accommodations to individuals with mobility disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii)

75.     Family Dollar's conduct is ongoing and continuous, and Plaintiff has been harmed by Family Dollar's conduct.

76.     Unless Family Dollar is restrained from continuing its ongoing and continuous course of conduct, Family Dollar will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

77.     Given that Family Dollar has not complied with the ADA's requirements to make its stores fully accessible to, and independently usable by, individuals who use wheelchairs or scooters, Plaintiff invokes her statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, prays for:

a.     A declaratory judgment that Family Dollar is in violation of the specific requirements of Title III of the ADA, and the relevant implementing regulations of the ADA, in that Family Dollar's stores are not fully accessible to and independently usable by individuals who use wheelchairs or scooters;

b.    A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that: (i) directs Family Dollar to take all steps necessary to remove the access barriers described above and to bring its Illinois stores into full compliance with the requirements set forth in the ADA and its implementing regulations, so that the stores are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters; (ii) directs Family Dollar to change its policies and practices to ensure its Illinois stores are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters; and (iii) directs that Plaintiff shall monitor Defendant's Illinois stores to ensure that the injunctive relief ordered above remains in place;

c.    An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing her counsel as class counsel;

d.    Payment of costs of suit;

e.    Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, and/or nominal damages; and,

f.    The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: February 10, 2020

Respectfully submitted,

**CARLSON LYNCH, LLP**

*/s/ R. Bruce Carlson*
R. Bruce Carlson
Kelly K. Iverson*
Bryan A. Fox*
1133 Penn Avenue, 5th Floor
Pittsburgh PA, 15222
Tel: (412) 322-9243
bcarlson@carlsonlynch.com
kiverson@carlsonlynch.com
bfox@carlsonlynch.com

Katrina Carroll
Nicholas Lange
111 W. Washington Street
Suite 1240
Chicago, IL 60602
Tel: (312) 750-1265
kcarroll@carlsonlynch.com
nlange@carlsonlynch.com

*Pro Hac Vice Application Forthcoming

*Attorneys for Plaintiff*